UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TRINA A. BOWIE,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | NO. 20-1218 |
| DARNLEY R. HODGE, SR., ET AL.,<br>    Defendants | SECTION: "E" (1) |

## ORDER AND REASONS

Before the Court is a Rule 12(b)(6) Motion to Dismiss filed by Sheriff Marlin N. Gusman and Compliance Director Darnley R. Hodge, Sr.,[1] Deputy Lieutenant Jerry Martin, and Chief of Investigations Michael Laughlin.[2] For the following reasons, the motion is **GRANTED.**

## BACKGROUND[3]

On or about Ma7 7, 2018, Plaintiff, a Black woman, was hired as the Director of Human Resources for the Orleans Parish Sheriff's Office ("OPSO").[4] Plaintiff brings claims of sexual harassment, retaliatory hostile work environment, and wrongful termination under Title VII of the Civil Rights Act of 1964 ("Title VII"); retaliatory discharge in violation of her rights under the First Amendment of the U.S. Constitution under 42 U.S.C. § 1983; violation of her right to equal protection under Art. I, § 3 of the Louisiana Constitution; sexual harassment, retaliatory hostile work environment, and

---

[1] Darnley R. Hodge, Sr. was appointed the Acting Compliance Director for the Orleans Parish Prison by Court Order dated January 29, 2018, effective February 19, 2018. Minute Entry at 2, *Jones v. Gusman*, No. 12 Civ. 859 (E.D. La. Feb. 29, 2018) (No. 1151). On October 12, 2018 Hodge was formally appointed to the position of Compliance Director. Order & Reasons at 2, *Jones v. Gusman*, No. 12 Civ. 859 (E.D. La. Aug. 5, 2020) (No. 1311).
[2] R. Doc. 24. Plaintiff Trina Bowie opposes this motion. R. Doc. 25. Defendants filed a reply. R. Doc. 28.
[3] The facts provided herein are as alleged in Plaintiff's First Superseding and Amending Complaint. R. Doc. 20.
[4] R. Doc. 20 at ¶ 13 and 21.

1

wrongful termination under the Louisiana Employment Discrimination Law ("LEDL");[5] violation of employee protection from reprisal under the Louisiana Whistleblower Law;[6] violation of a public employee's right to be protected from reprisal for disclosure of improper acts;[7] violation of Louisiana tort law under Louisiana Civil Code Arts. 2315 and 2316; and respondeat superior holding Sheriff Gusman liable for the acts of his employees under Louisiana Civil Code Art. 2320.

Allegations regarding Sheriff Marlin N. Gusman

Plaintiff alleges Sheriff Marlin N. Gusman is the duly elected Sheriff for the Parish of Orleans.[8] In her prayer, Plaintiff states that Sheriff Gusman is her employer.[9] Elsewhere, she alleges Sheriff Gusman also is the employer of Defendants Martin, Laughlin, and Hodge.[10] Plaintiff alleges Hodge had the authority to hire and fire her, but with only Sheriff Gusman's approval.[11] Plaintiff alleges Sheriff Gusman "attended secret meetings to carry out a plan to terminate or force her to resign."[12]

Allegations regarding Jerry Martin

Plaintiff alleges Deputy Lieutenant Jerry Martin is a supervisory employee of the Sheriff's Office.[13] He allegedly was assigned as "a unit manager over a floor in the prison."[14] Plaintiff alleges Martin began sexually harassing her from the inception of her employment at OPSO. On or about May 7, 2018, as she was walking up the steps to the entrance of the office building, Martin "made derogatory sexual remarks" to Plaintiff

---

[5] La. Rev. Stat. 23:301, et seq.
[6] La. Rev. Stat. 23:967.
[7] La. Rev. Stat. 41:1169.
[8] R. Doc. 20 at ¶ 17.
[9] *Id.* at ¶ 23.
[10] *Id.* at ¶ 17.
[11] *Id.* at ¶¶ 21-22.
[12] *Id. at ¶ 91.*
[13] *Id.* at ¶ 15.
[14] *Id.* at ¶ 23.

which she describes as a "cat call."[15] Martin allegedly referred to Plaintiff as "sweetie," "baby," and "good looking."[16] Plaintiff alleges Martin whistled at her and looked her "up and down from head to toe as he spoke to her."[17] Plaintiff was warned by her Human Resources team that "Martin was a protected employee by Chief of Investigations defendant Michael Laughlin, and not to mess with him or file a formal complaint if she wanted continued employment at OPSO."[18] Plaintiff alleges Martin "attended secret meetings to carry out a plan to terminate or force her to resign."[19]

Allegations regarding Michael Laughlin

Plaintiff alleges Michael Laughlin is a supervisory employee at the Sheriff's Office.[20] Plaintiff alleges that, when she was conducting interviews for the position of Chief of Corrections, Laughlin loudly "told her not to either recommend to the hiring team or hire candidate Byron Lecounte, a black candidate from Atlanta, but to hire Rodney R. Taylor, a white candidate he preferred from Texas."[21] After Lecounte was hired over Laughlin's objections, he allegedly "stopped speaking" to Plaintiff and demonstrated his anger through facial expressions.[22] He further allegedly did not schedule Plaintiff for proper formal training through a qualified Peace Officer Standards and Training Law instructor and, instead, referred her to a low level subordinate.[23]

Plaintiff alleges Laughlin "was known to falsely accuse an employee of violating an OPSO policy resulting in the employee being terminated."[24] Plaintiff further alleges

---

[15] *Id.* at ¶¶ 23 and 27.
[16] *Id.* at ¶ 26.
[17] *Id.* at ¶¶ 24-25.
[18] *Id.* at ¶ 28.
[19] *Id. at ¶ 91.*
[20] *Id.* at ¶ 16.
[21] *Id.* at ¶¶ 66-67.
[22] *Id.* at ¶¶ 70-71.
[23] *Id.* at ¶ 74.
[24] *Id.* at ¶ 29.

Laughlin offered a former OPSO Human Resources Director a position and he "discussed files and offered her [the former OPSO Human Resources Director] a position after he or third parties at his command secretly removed files from the Human Resources Office."[25] Plaintiff alleges Laughlin "attended secret meetings to carry out a plan to terminate or force her to resign."[26]

Allegations regarding Darnley R. Hodge, Sr.

Plaintiff alleges Darnley R. Hodge, Sr. is her direct supervisor with the authority to fire her, with Sheriff Gusman's approval.[27] Plaintiff alleges Hodge hired her, with Sheriff Gusman's approval, on or about May 7, 2018.[28]

Plaintiff alleges Hodge sexually harassed her by physically bumping into her "if he had an occasion to stand next to [her]," which embarrassed and humiliated Plaintiff.[29] Plaintiff alleges the physical contact escalated and, at various times between June 4, 2018 and December 8, 2018, Hodge "touched or rubbed plaintiff's legs, without her consent," when he sat next to her during meetings.[30] Hodge allegedly "walked behind plaintiff and hit her in the rear."[31] Further, Hodge allegedly would say "sexually explicit things to her" and, on several occasions, "rub[bed] her shoulders" and "brush[ed] against [her] breasts with his body and hands."[32] Once, at a dinner at Landry's Restaurant, Hodge allegedly "flirted" with Plaintiff before "inappropriately [touching her] without her consent."[33] Plaintiff alleges on or about October 9, 2018 after dinner at Santa Fe Restaurant, while

---

[25] *Id.* at ¶¶ 94-95.
[26] *Id.* at ¶ 91.
[27] *Id.* at ¶ 22.
[28] *Id.* at ¶ 21.
[29] *Id.* at ¶ 33.
[30] *Id.* at ¶ 34.
[31] *Id.* at ¶ 31.
[32] *Id.* at ¶ 36.
[33] *Id.* at ¶ 41.

4

sitting in her parked car, "Hodge tried to kiss her, sticking his tongue in her mouth" and "tried to insert his finger into plaintiff's vagina, all without her consent."[34] On multiple occasions, Hodge would say "sexually explicitly things to Trina without her consent causing her embarrassment, humiliation, and extreme mental anguish."[35]

Plaintiff alleges Hodge prohibited her from carrying out her "delegated assignment" of reporting incidents of sexual harassment on behalf of female employees.[36] After sexual harassment complaints at the Sheriff's Office were reported to Plaintiff, Hodge allegedly told Plaintiff "not to get involved with female employees reporting sexual harassment incidents at OPSO after she briefed him about the complaints."[37] Hodge allegedly discouraged Plaintiff "numerous times alone and in front of employees over a period of eight months" from addressing sexual harassment incidents.[38] Plaintiff alleges "[t]he sexual harassment complaints primarily centered on male supervisors making sexually explicit remarks about females to them; unwanted telephone calls to female employees at their homes; constant nagging female employees at work to sleep with a supervisor, inappropriately touching their bodies, and some pressured into having sex with a supervisor."[39] According to Plaintiff, during her employment at OPSO, she and Hodge had "two heated discussions" over Hodge's refusal to let her make an initial investigative report after an employee alleged sexual harassment.[40]

---

[34] *Id.* at ¶¶ 42-44.
[35] *Id.* at ¶ 35.
[36] *Id.* at ¶ 106(C).
[37] *Id.* at ¶¶ 50, 54.
[38] *Id.* at ¶ 58.
[39] *Id.* at ¶ 51.
[40] *Id.* at ¶ 59.

5

In a separate series of events occurring around January 2019, Plaintiff alleges Hodge prohibited her from investigating allegations of pension abuse and fraud.[41] Plaintiff alleges she was informed by an Internal Auditor, Jane Dimitry, that the state of the OPSO's Civil Financial Records were a "mess" and, as a result, negatively impacting the pension contributions of OPSO employees.[42] Plaintiff alleges she "reported what Ms. Dimitry told her to both Hodge, and his supervisor and head monitor Margo Frazier," and Hodge "instructed plaintiff not to get involved with the old pension plan."[43]

In anticipation of an internal work event planned by Plaintiff to celebrate the OPSO's women employees, Hodge allegedly "slammed his fists on the table stating he would like to know when we were going to celebrate white people, causing plaintiff embarrassment and humiliation before her fellow employees, and extreme mental anguish."[44]

During a meeting held in March 2019, with several attendants present, Hodge allegedly, "in an intimidating tone," repeated all the violations Plaintiff had reported to Hodge's supervisor concerning abuse of pension money benefits, sexual harassment, demeaning treatment of women and his falling in line with defendant Laughlin's corruption and, referring to Plaintiff, Hodge stated, "there is a snake at the table and I know who you are."[45] Several days later, Plaintiff alleges she "made a formal response to Hodge's previous remark there was a 'snake at the table.'"[46] According to Plaintiff, "[s]hortly thereafter she was called to defendant Hodge's office and terminated."[47]

---

[41] *Id.* at ¶ 106(D).
[42] *Id.* at ¶¶ 75-83.
[43] *Id.* at ¶¶ 85-86.
[44] *Id.* at ¶¶ 87-89.
[45] *Id.* at ¶¶ 96-98.
[46] *Id.* at ¶ 100.
[47] *Id.* at ¶ 103.

Plaintiff alleges Hodge "attended secret meetings to carry out a plan to terminate or force her to resign."[48]

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[49] However, "[t]he 12(b)(6) motion is not favored and should rarely be granted."[50] Instead, "resolution on the merits [is] preferred to disposition on the technical grounds of failure to state a claim."[51]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[52] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[53] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[54] "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[55]

---

[48] *Id.* at ¶ 91.
[49] *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[50] *Airline Car Rental, Inc. v. Shreveport Airport Authority*, 667 F. Supp. 293, 295 (W.D. La. 1986) (citing *Madison v. Purdy*, 410 F.2d 99 (5th Cir.1969)).
[51] *Id.* (citation omitted).
[52] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[53] *Id.*
[54] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[55] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[56] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[57] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[58]

## LAW AND ANALYSIS

**I. Plaintiff's Title VII Actions against all Defendants in their Official and Individual Capacities are Dismissed Without Prejudice for Failure to Exhaust Administrative Remedies.**

Plaintiff brings a Title VII claim against her employer, Sheriff Marlin Gusman, in his official capacity. Plaintiff brings Title VII claims against Defendants Martin, Laughlin, and Hodge, in their official and individual capacities.

Congress passed the Civil Rights Act of 1964 as a tool to redress discrimination across our society, including in areas of voting rights, education, accommodations, and employment. Title VII of the Act prohibits employers from discriminating against employees on account of their "race, color, religion, sex, or national origin."[59] Employers with 15 or more employees, including government entities such as the Orleans Parish Sheriff's Office, are governed by Title VII.[60]

Title VII requires plaintiffs to exhaust their administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC")

---

[56] *Twombly*, 550 U.S. at 555.
[57] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).
[58] *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[59] 42 U.S.C. § 2000e-2(a).
[60] 42 U.S.C. § 2000e(b). *See Smith v. Parish of Washington*, 318 F.Supp.2d 366, 378-79 (E.D. La. Mar. 26, 2004) (finding the sheriff qualified as an employer for Title VII purposes). Defendants concede "Sheriff Gusman would be the appropriate party for any exhausted claims arising under Title VII properly alleged by Plaintiff." R. Doc. 24-1 at 9.

within 180 days after the alleged unlawful employment practice.[61] Plaintiffs must receive a right to sue letter before seeking judicial relief under a private cause of action.[62] In that way, the EEOC has an opportunity to first investigate the matter or issue a right to sue letter.[63] If the EEOC sends a right to sue letter, the complainant must bring a lawsuit within 90 days of receipt.[64] "The basic two statutory requirements (although these are not necessarily 'jurisdictional') for a Title VII suit are (1) the filing of a complaint with the EEOC and (2) the receipt of the statutory notice of right to sue."[65] The Fifth Circuit has held that "employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court."[66]

    The Defendant provided Plaintiff's EEOC Charge of Discrimination which reflects she digitally signed it on August 2, 2019.[67] Plaintiff admits she has not received a right to sue letter.[68] Instead, Plaintiff states she has "received a letter from the U.S. Equal Opportunity Commission confirming the request for a notice of right to sue, and informed plaintiff the U.S. Department of Justice will issue the notice directly to her."[69] A confirmation of receipt of a request for a notice of a right to sue is not a right to sue letter.

    Plaintiff complains 217 days have elapsed between the time she signed her EEOC complaint and the time she filed suit in state court, surpassing the 180-day rule,[70] and as

---

[61] 42 U.S.C. § 2000e-5 (e-f).
[62] *Id.*
[63] *Roberts v. Laredo Indep. School Dist.*, 2007 WL 9761656 (S.D. Tex. Aug. 21, 2007).
[64] *Prince-Rivers v. Federal Express Ground*, 731 Fed.Appx. 298, 300 (5th Cir. 2018) (citing 42 U.S.C. § 2000e-5(f)).
[65] *Fellows v. Universal Rest., Inc.*, 701 F.2d 447, 449 (5th Cir. 1983); *see also Davis v. Ft. Bend County*, 893 F.3d 300, 305 (5th Cir. 2018) (finding "Title VII plaintiff's failure to exhaust her administrative remedies is not a jurisdictional bar but rather a prudential prerequisite to suit" and citing *Womble v. Banghu*, 864 F.2d 1212, 1213 (5th Cir. 1989)).
[66] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002).
[67] R. Doc. 24-2.
[68] R. Doc. 25 at 1.
[69] R. Doc. 20 at ¶ 5. See R. Doc. 1-1 at 16.
[70] R. Doc. 25 at 1.

within 180 days after the alleged unlawful employment practice.[61] Plaintiffs must receive a right to sue letter before seeking judicial relief under a private cause of action.[62] In that way, the EEOC has an opportunity to first investigate the matter or issue a right to sue letter.[63] If the EEOC sends a right to sue letter, the complainant must bring a lawsuit within 90 days of receipt.[64] "The basic two statutory requirements (although these are not necessarily 'jurisdictional') for a Title VII suit are (1) the filing of a complaint with the EEOC and (2) the receipt of the statutory notice of right to sue."[65] The Fifth Circuit has held that "employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court."[66]

The Defendant provided Plaintiff's EEOC Charge of Discrimination which reflects she digitally signed it on August 2, 2019.[67] Plaintiff admits she has not received a right to sue letter.[68] Instead, Plaintiff states she has "received a letter from the U.S. Equal Opportunity Commission confirming the request for a notice of right to sue, and informed plaintiff the U.S. Department of Justice will issue the notice directly to her."[69] A confirmation of receipt of a request for a notice of a right to sue is not a right to sue letter.

Plaintiff complains 217 days have elapsed between the time she signed her EEOC complaint and the time she filed suit in state court, surpassing the 180-day rule,[70] and as

---

[61] 42 U.S.C. § 2000e-5 (e-f).
[62] *Id.*
[63] *Roberts v. Laredo Indep. School Dist.*, 2007 WL 9761656 (S.D. Tex. Aug. 21, 2007).
[64] *Prince-Rivers v. Federal Express Ground*, 731 Fed.Appx. 298, 300 (5th Cir. 2018) (citing 42 U.S.C. § 2000e-5(f)).
[65] *Fellows v. Universal Rest., Inc.*, 701 F.2d 447, 449 (5th Cir. 1983); *see also Davis v. Ft. Bend County*, 893 F.3d 300, 305 (5th Cir. 2018) (finding "Title VII plaintiff's failure to exhaust her administrative remedies is not a jurisdictional bar but rather a prudential prerequisite to suit" and citing *Womble v. Banghu*, 864 F.2d 1212, 1213 (5th Cir. 1989)).
[66] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002).
[67] R. Doc. 24-2.
[68] R. Doc. 25 at 1.
[69] R. Doc. 20 at ¶ 5. See R. Doc. 1-1 at 16.
[70] R. Doc. 25 at 1.

a result she may sue without receiving a right to sue letter.  The Court is sympathetic to Plaintiff's complaint of unreasonable delay on the part of the EEOC, likely due to the Covid-19 pandemic, but does not have the discretion to waive this statutory requirement.[71]

Plaintiff has the option to request that the EEOC terminate its investigation and issue a right to sue letter under the "safety valve" provision found in 29 C.F.R. § 1601.28 which allows aggrieved persons to prosecute their claims should the EEOC be unable to do so.[72] Once the EEOC's investigation is complete regardless of its findings, or after 180 days have passed without a finding, the complainant may request a notice of right to sue.[73] If the EEOC receives such a request more than 180 days after the filing of the charge, it will cease its investigation and issue a right to sue letter. The Plaintiff has not pursued that path in this case.

Plaintiff has not exhausted her administrative remedies before bringing her suit under Title VII.[74] Plaintiff's Title VII claims against Defendants Gusman, Martin, Laughlin, and Hodge, in their official and individual capacities, are dismissed without prejudice for failure to exhaust administrative remedies.

**II.    Plaintiff's Section 1983 Actions Against All Defendants in their Official and Individual Capacities are Dismissed with Prejudice.**

Plaintiff bring claims against all Defendants, Sheriff Gusman in his official capacity and the others in their individual and official capacities, under 42 U.S.C § 1983 for

---

[71] *Fort Bend County, Texas v. Davis,* 139 S.Ct. 1843, 1851 (2019) (Title VII's char-filing requirement is a mandatory claim-processing rule).
[72] 29 C.F.R. § 1601.28. See Hardy v. Lewis Gale Medical Center, LLC, 377 F.Supp. 3d 596 (W.D. Va. 2019).
[73] Circuits differ on whether the EEOC may issue a right to sue letter before 180 days have passed, but that is not an issue in this case.
[74] *See also Simmons-Myers*, v. Caesars Entertainment Corp., 515 Fed.Appx. 269, 272 (5th Cir. 1991) (quoting *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578) (internal quotation marks omitted).

wrongful discharge in retaliation for her exercise of her rights under the First Amendment to the United States Constitution.[75] Section 1983 provides a civil cause of action for the deprivation of rights secured by the Constitution or other federal laws under color of state law.[76]

Initially, Defendants argue the fact that Plaintiff has brought Title VII claims relating to her employment precludes her § 1983 claims because Title VII is the exclusive remedy for employment discrimination.[77] This is not accurate. "[A] plaintiff may pursue both section 1983 and Title VII claims when the employer's conduct violates both Title VII and a separate constitutional or statutory right."[78] While it is accurate that "Title VII provides the exclusive remedy for a violation of its own terms," a § 1983 claim is still available when a "public employer's conduct violates both Title VII and a separate constitutional or statutory right."[79] Nevertheless, Defendants are correct that alleging a violation of Title VII alone does not serve as the basis for § 1983 claim.[80] If a violation of Title VII could be asserted through § 1983, a complainant would avoid Title VII's congressionally-sanctioned particularities.[81]

---

[75] R. Doc. 20 at ¶ 106 (G). Plaintiff's reference to the First Amendment in ¶ 106 (F) is in relation to her retaliatory hostile work environment claim.
[76] 42 U.S.C. § 1983. *See Maine v. Thiboutot*, 448 U.S. 1, 4 (1980); *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 685-86 (1978) (explaining the legislative intent of § 1983's predecessor, Section 1 of the Civil Rights Act of 1871, was to "give a broad remedy for violations of federally protected civil rights"). *See also Longoria v. Harris*, 554 F.Supp 102, 107 (S.D. Tex. Dec. 15, 1982) (recognizing § 1983's purpose is to enforce federal rights, but not where particular statutes have exclusive remedial provisions).
[77] R. Doc. 24-1 at 12-13.
[78] *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 549 (5th Cir. 1997) (citing *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).
[79] *Johnston*, 869 F.2d at 1573.
[80] *Irby v. Sullivan*, 737 F.2d 1418, 1429 (5th Cir. 1984), and *Grady v. El Paso Cmty. Coll.,* 979 F.2d 1111, 1113 (5th Cir. 1992).
[81] *Jackson v. City of Atlanta, Tex.*, 73 F.3d 60, 63 (5th Cir. 1996). The Fifth Circuit further explained, "Congress intended for Title VII—with its own substantive requirements, procedural rules, and remedies—to be the exclusive means by which an employee may pursue a discrimination claim."

Case 2:20-cv-01218-SM-JVM Document 29 Filed 08/17/20 Page 12 of 19

It is well settled that § 1983 by itself "does not provide any substantive rights at all."[82] In order to state a claim under § 1983, the plaintiff must allege the infringement of a federal right created by a federal law or the constitution. Section 1983's purpose is to serve "as a vehicle for 'vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." [83] In order to successfully plead a § 1983 claim, Plaintiff must assert "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor."[84] To meet the first prong of the test, an underlying constitutional or statutory violation must be alleged as a predicate to liability.[85] In this case, the only violation of federal law identified by Plaintiff relates to her exercise of her First Amendment right to free speech. Plaintiff alleges she was terminated in retaliation for her exercise of her First Amendment rights. [86]

In order to prevail on a First Amendment retaliation claim, Plaintiff must show "(1) [she] suffered an adverse employment action; (2) [her] speech involved a matter of public concern; (3) [her] interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) [her] speech motivated the employer's adverse employment action."[87] Plaintiff generally alleges she reported incidents of sexual harassment complaints by other employees of the OPSO, she expressed her belief that she was required to investigate sexual harassment complaints,

---

[82] *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); Maine v. Thiboutot, 448 U.S. 1, 4(1979); Nilson v. City of Moss Point, Mississippi, 701 F.2d 556, 559 n.3 (5th Cir. 1983) (en banc).
[83] *Henly v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012) (quoting *Baker v. McCollan*, 443 U.S. 137 (1979)).
[84] *Victoria W. v Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).
[85] *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1574 (5th Cir. 1989) ("Rather than creating substantive rights, § 1983 simply provides a remedy for the rights it designates."); *Montgomery-Smith v. La. Dep't of Health & Hospitals,* 299 F.Supp.3d 790, 806 (E.D. La. 2018).
[86] R. Doc. 20 ¶ 106(G).
[87] *Salge v. Edna Indep. School Dist.*, 411 F.3d 178, 284 (5th Cir. 2005) (citing *Harris v. Victoria Indep. School Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)).

12

and she reported concerns about abuse and fraud with respect to the OPSO's now defunct retirement plan.[88] Plaintiff alleges Hodge told her not to get involved when women employees reported sexual harassment incidents after she briefed him on complaints and Hodge even refused to allow an initial investigative report to proceed in one instance.[89] Plaintiff further alleges Hodge instructed "plaintiff not to get involved with the old pension plan" after she reported allegations of abuse and fraud to head monitor Margo Frazier.[90]

All four elements must be alleged to state a First Amendment retaliation claim. Plaintiff fails to meet the second element—that her speech involved a matter of public concern. "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."[91] "To determine whether a public employee's speech is entitled to protection, courts undertake a two-step inquiry. The first step 'requires determining whether the employee spoke as a citizen on a matter of public concern.'"[92] "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech."[93] If the answer is yes, then a court must ask whether the "government entity had an adequate justification for treating the employee differently from any other member of the general public."[94] The Supreme Court explained, however, that "[a] government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the

---

[88] R. Doc. 20 at ¶¶ 59, 60, and 106 (C), (D), and (G).
[89] *Id.* at ¶¶ 54, 58-59.
[90] *Id.* at ¶¶ 85-86, 106(D).
[91] *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).
[92] *Id.* at 418, 126 So. Ct. 1951.
[93]*Id.*
[94]*Id.*

entity's operations." [95] When public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes.

While "public employees do not surrender all their First Amendment rights by reason of their employment," these rights are generally limited to the scope of public concern, not internal employment. [96] The Constitution does not "insulate" public employee communications from employer discipline.[97] Speech limitations imposed by a government employer may only be directed at speech that might affect to the entity's operations.[98] "To rise to the level of public concern, the speech must have been made primarily as a citizen rather than as an employee."[99] "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.' "[100] The Fifth Circuit has recognized that, "[b]ecause almost anything that occurs within a public agency *could* be of concern to the public," it is not of great significance that an employee's speech is simply on a topic in which the public might or would have a great interest. [101] Thus, to determine whether an employee's A fact-specific analysis that scrutinizes "content, form, and context" is necessary to determine whether speech addresses a matter of public concern.[102]

Plaintiff's allegations—her reporting of incidents of sexual harassment complaints by other employees of the OPSO, her expression of her belief that she was required to

---

[95] *Id.*
[96] *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (finding that an internal memorandum prepared by a prosecutor in the course of his ordinary job constituted unprotected employee speech).
[97] *Id.* at 421.
[98] *Id.* at 418.
[99] *Dodds v. Childers*, 933 F.2d, 271, 273 (5th Cir. 1991). *See Lane v. Franks*, 573 U.S. 228, 235-37 (2014) (applying a balancing test between employee's right to free speech and their government employer's countervailing interest in controlling the operations of its workplace).
[100] *Branton v. City of Dallas,* 272 F.3d 730, 739 (5th Cir. 2001) (quoting *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).
[101] *Terrell v. Univ. of Texas Sys. Police,* 792 F.2d 1360 (5th Cir.1986).
[102] *Harris*, 168 F.3d at 221 (5th Cir. 1999).

investigate and report on sexual harassment complaints, and her reporting of concerns about abuse and fraud with respect to the OPSO's former retirement plan—all relate to speech she engaged in as part of her official duties. The test is not whether she was required to engage in the speech, but rather whether she made the speech "pursuant to [her] 'official responsibilities'" and whether that speech is "ordinarily within the scope of [her] duties."[103] Plaintiff alleges Hodge prohibited her from carrying out her "delegated assignment" of reporting incidents of sexual harassment on behalf of female employees.[104] Plaintiff's main concern seemed to be her possible liability for failure to investigate and document allegations of sexual harassment. Plaintiff told Hodge "she did not want to be disciplined or terminated for failure to document an allegation of sexual harassment, or violate any state or federal law."[105] Plaintiff consulted with the OPSO's counsel to determine whether OPSO's insurance policy would cover her if she was held liable.[106] The context and form of Plaintiff's complaints indicate they do not involve matters of public concern. Instead, she spoke in her role as Director of Human Resources on a matter of purely private concern.

Plaintiff's § 1983 claims against Defendants Gusman, Martin, Laughlin, and Hodge, in their official and individual capacities, in retaliation for her exercise of her First Amendment rights are dismissed with prejudice.

---

[103] *Lane*, 134 S.Ct. at 2379 (quoting *Garcetti*, 547 U.S. at 424, 126 S.Ct. 1951).
[104] R. Doc. 20 at ¶ 106(C).
[105] *Id.* at ¶ 60.
[106] *Id.* at ¶ 61.

### III. Plaintiffs' State Law Claims Against All Defendants in Their Individual and Official Capacities are Dismissed Without Prejudice.

Plaintiff's remaining claims are under Louisiana state law. More specifically, Plaintiff alleges violation of her right to equal protection under Art. I, § 3 of the Louisiana Constitution; sexual harassment, retaliatory hostile work environment, and wrongful termination under the Louisiana Employment Discrimination Law ("LEDL");[107] violation of employee protection from reprisal under the Louisiana Whistleblower Law;[108] violation of a public employee's right to be protected from reprisal for disclosure of improper acts;[109] violation of Louisiana tort law under Louisiana Civil Code Arts. 2315 and 2316; and seeks to hold Sheriff Gusman liable for the acts of his employees under Louisiana Civil Code Art. 2320.[110]

The Court possesses only supplemental jurisdiction over Plaintiff's state law claims. Title 28, United States Code, Section 1367(c), provides that district courts may decline to exercise supplemental jurisdiction over state law claims if, *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction." Such is the case here, as the Court has dismissed all the federal claims asserted by Plaintiff. As a result, the Court will exercise its discretion pursuant to Title 28, United States Code, Section 1367(c) and decline to exercise jurisdiction over Plaintiff's state law claims.

---

[107] La. Rev. Stat. 23:301, et seq.
[108] La. Rev. Stat. 23:967.
[109] La. Rev. Stat. 41:1169.
[110] R. Doc. 20 at ¶¶ 106-09.

## IV.  Plaintiff is Not Granted Leave to File a Second Amendment.

Plaintiff filed this action in state court on March 6, 2020.[111] On June 11, 2020, the Court granted plaintiff leave to file an amended complaint,[112] requiring Plaintiff to set forth in her amended complaint:

(1) all causes of action asserted by each Plaintiff against each Defendant,

(2) the specific factual basis for each cause of action against each Defendant,

(3) the specific federal or state law basis for each cause of action with references to the underlying statutes and/or constitutional provisions giving rise to the cause of action,

(4) whether each defendant is being sued as an individual and/or in his official capacity for each cause of action,

(5) the nature of the damages claimed under each cause of action, and

(6) the basis of Plaintiff's standing to bring each cause of action she asserts.[113]

Plaintiff's First Superseding and Amending Complaint was filed on June 25, 2020.[114]

Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend."[115] A district court must possess a "substantial reason" to deny a motion under Rule 15(a).[116] In deciding whether to grant leave under Rule 15(a), courts may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[117] Motions to amend are

---

[111] R. Doc. 1-1.
[112] R. Doc. 19.
[113] *Id.* at 8-9.
[114] R. Doc. 20.
[115] *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (internal quotation marks omitted).
[116] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).
[117] *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005).

"entrusted to the sound discretion of the district court,"[118] and a court may properly refuse to grant leave to amend if the plaintiff failed to cure a defect after being given earlier opportunity to do so.[119]

In this case, Plaintiff already has been given leave to amend and given specific instructions to address the arguments in Defendant's Motion to Dismiss, including the need for her to set forth the specific federal or state law basis for each cause of action and the constitutional provisions giving rise to the cause of action. The Court finds the Plaintiff's failure to cure deficiencies by the amendment previously allowed is a substantial reason to deny her request for leave to amend a second time.

## CONCLUSION

**IT IS ORDERED** that the Defendants' motion to dismiss for failure to state a claim is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Title VII claims against Defendants Marlin N. Gusman, Darnley R. Hodge, Sr., Jerry Martin, and Michael Laughlin, in their official and individual capacities, are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claims against Defendants Marlin N. Gusman, Darnley R. Hodge, Sr., Jerry Martin, and Michael Laughlin, in their official and individual capacities, in retaliation for her exercise of her First Amendment rights are **DISMISSED WITH PREJUDICE**.

---

[118] *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998).
[119] Arthur R. Miller et al., *When Leave to Amend May Be Denied*, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.). *See, e.g, Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988) (denying a third leave to amend because plaintiff failed to "remedy the most basic deficiencies in his earlier complaints"); Zucco *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) (denying leave to amend after plaintiff subsequently failed to add the requisite particularity in its claims the first two times).

**IT IS FURTHER ORDERED** that Plaintiff's state law claims against Defendants Marlin N. Gusman, Darnley R. Hodge, Sr., Jerry Martin, and Michael Laughlin, in their official and individual capacities, are **DISMISSED WITHOUT PREJUDICE**.

**New Orleans, Louisiana, this 17th day of August, 2020.**

                                            **SUSIE MORGAN**
                            **UNITED STATES DISTRICT JUDGE**